[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. THE DISSOLUTION
It is found that all of the allegations of Plaintiff's CT Page 878 complaint have been proven, that the marriage has broken down irretrievably, and the marriage is ordered dissolved for that reason.
II. THE ESTABLISHMENT of VALUES on ASSETS in DISPUTE
A. The family dwelling at 14 Apple Hill Road, West Hartford Connecticut. It consists of a two-story, one-family dwelling containing 8 rooms, 2-1/2 baths, and a 2-stall attached garage. It is situated on a dead-end street in a fine residential section of the community. Many repairs are needed on the property. All of the appraisers who testified for the parties were qualified and capable.
1. Peter R. Marsele appraised the property for Plaintiff on October 26, 1990 and set a value of $420,000 on it.
2. Marc Gottesdiener appraised the property for Defendant on October 25, 1990 and valued it at $331,900.
3. Jo Broder appraised the property for Defendant on November 21, 1990 and valued it at $319,000.
On the evidence, it is found that the present fair market value of the property is $344,400. Deducting from that figure the unpaid balance of the mortgage on the premises in the amount of $345,600, it is determined that the total equity in the premises is $340,854.00.
B. An apartment complex situated at 47-61 Princeton Street, New Britain, Connecticut, consisting of five separate apartment buildings, containing 21,120 square feet of living space and made up of 31 units. The property is in reasonable good condition and is located in the vicinity of Central Connecticut State university in the east central section of the city. Here, too, all of the appraisers were qualified.
1. A. R. Canzonetti, who had appraised the property for the Defendant on May 3, 1989 was called by Plaintiff and testified that its value when he appraised it was $1,200,000.00.
2. Peter R. Marsele, Plaintiff's second witness, appraised the complex on November 10, 1990 and stated its value to be $1,200,000.00, at that time.
3. Marc Gottesdiener, Defendant's witness, appraised the property on November 9, 1990 and valued it at $889,000.00.
After evaluating all of the evidence, it is found that the value of the property is $1,100,000.00. After deducting from CT Page 879 that amount the unpaid balance of a first mortgage to New Britain Federal Savings and Loan Association in the amount of $210,000.00 it is found that the total equity in the property is $890,000.00
C. Defendant's Accounting Practice
Defendant, a certified public accountant, has been engaged in the practice of accounting for more than thirty years. He is a solo practitioner and has his office in East Hartford.
1. Benjamin E. Cohen, a C.P.A. with more than 35 years experience, evaluated the practice for Plaintiff. On the strength of Defendant's federal income tax return for 1988, he valued the practice at $135,000 plus the value of the office furniture, fixtures, and leasehold improvements.
In Plaintiff's claim for relief (11-14-90), its value was listed at $175,000.00.
2. James L. Cohen, a C.P.A. with 30 years of experience testified for Defendant and placed a value of $84,358.00 on the practice.
After reviewing the evidence in this respect, this court finds the value of the accounting practice to be $112,000.00.
III. THE VALUES OF THE VARIOUS PROPERTIES IN DISPUTE HAVING BEEN ESTABLISHED, A LIST OF THE ASSETS OF EACH OF THE PARTIES IS SET FORTH BELOW TO FACILITATE THE FINAL DISTRIBUTION BY THE COURT. (See EXHIBIT "A")
[EDITORS' NOTE: EXHIBIT ”A” IS ELECTRONICALLY NON-TRANSFERRABLE.]
IV. The total marital estate having been established, the court turns now to the consideration of the following subjects before determining the adjusted marital estate available for distribution.
A. Plaintiff's two inheritances
In 1967, Plaintiff inherited $36,500 from the estate of her mother. At that time, she and each of her brothers and sisters inherited a 1/8th fractional share in a 160-acre tract of land having a total value of $69,800. The land remained in the name of all of the children until 1987 when it was sold. At that time, Plaintiff received her fractional share amounting to $109,500. After evaluating all of the evidence, including but not limited to the state of the marriage at the time of the 1987 distribution, this court concludes that these inherited funds should not be considered as part of that marital estate which is CT Page 880 available for distribution. Instead, plaintiff should receive a credit in the amount of $146,000 before distribution is made.
B. Plaintiff's, note to Defendant for $13,000.
The evidence in this subject is at the very least most confusing. While Defendant has listed this amount in his financial affidavit as an asset, Plaintiff has not listed it as a liability in hers. Considering that this court considers the practice of a husband or wife signing a note to the other for money owed is to be unusual at best, and on all the evidence, it is concluded that while this note is properly considered among the marital assets, it should not be included among the adjusted marital assets available for distribution.
Deducting from the sum of $2,005,110 representing total marital assets the amount of Plaintiff's inheritances ($146,000) and the amount of her note to Defendant ($13,000), the adjusted total marital estate available for distribution is found to be $1,846,110.00.
V. The values of the various assets in dispute having been established and the amount of the marital estate on hand for distribution having been determined, the court now turns to an evaluation of the evidence as it pertains to the provisions of Sec. 46b-81c and Sec. 46b-82 C.G.S.
The Plaintiff is 56 years of age and the Defendant 60. They were married on September 8, 1955, commenced living in separate rooms about 1987 and this action was instituted in May 1988. The marriage has endured after a fashion for 35 years. The Plaintiff had a radical mastectomy for breast cancer in 1981 with additional surgery in 1984 and 1989. Defendant since 1987 has suffered from a chronic virus acquired from eating contaminated fish. He has indicated he is unable to work a full day and is contemplating early retirement. Each of the parties graduated from the University of Connecticut and they enjoy a similar station in their community. The parties have three daughters, all of whom are of age.
Addressing the causes for the dissolution from Plaintiff's point of view, the following is noted; over the years, Plaintiff's principal complaints have been that Defendant showed her little consideration, that he failed to provide her with sufficient household funds, that he had prolonged "silent periods", and that he was having affairs with other women. She described an incident in the late 1970 ties where she found Defendant in a compromising position with one of her friends in their home while she talked in an adjacent room with her friend's husband. She mentioned another occasion when, on the way home from New Haven, Defendant CT Page 881 ordered her out of the car during a quarrel over the use of the car heater. She described a loaded gun Defendant kept in the night table in their bedroom with the barrel pointed toward her. She portrayed herself as follows, "I'm not a jealous woman -, I don't have an extremely bad temper — there was no yelling and screaming in the house. I did no yelling — the Defendant would let the children play loud music. I smashed one record which the children placed on the wall to memorialize my temper."
Defendant's summary of this unhappy marriage is as follows: "The problems started in 1978 when the children went off to college leaving a void in our lives. I had my business but she had nothing to do. Her weight increased — she started blaming me for everything. She took out her frustrations on me. I've been drunk once in my life and have never been unfaithful to her. She constantly accused me of having affairs. I walked away rather than fight. Referring to the highway incident and that with his wife's friend, he stated. "She totally fabricated the whole thing." of note in this regard was the testimony of the former friend of Plaintiff accused of having an affair with Defendant who said forcefully "this whole episode never took place." She also added "Defendant would not fight with his wife — he wouldn't get involved in a domestic spat."
On all the evidence, this court finds that neither party is more at fault than the other for the breakdown of their marriage and that fault is not a predominating factor to be considered by this court in distributing the marital estate.
Concerning the occupation, amount and sources of income of the parties, the evidence reflects the following. Plaintiff was employed as a secretary during the first four years of their marriage but from 1959 until 1972 was totally occupied as a housewife and mother. In her words "Defendant was not to work in the house at all. I shoveled snow and raked leaves. I also did some typing for him." In 1982, she became involved in the sale of real estate and later managed an apartment complex owned by Defendant. She also owned and operated a real estate instructional school. She has been residing in Florida for almost two years, had a temporary part-time position while there, but is currently not working.
Defendant, a C.P.A., has practiced accounting, mostly as a sole practitioner, since 1956. For a period of five years in the 1970's he also operated a successful machine shop, earning almost $145,000 in 1975. His present gross weekly income from his accounting practice is $1445 and after the usual deductions, his net weekly income from this source is $831. The vocational skills and employability of the parties are reflected in these findings. CT Page 882
The estates of the parties have been previously noted. Plaintiff's financial affidavit lists debts for income and real estate taxes and for legal fees in the total amount of $48,000. A similar affidavit filed by Defendant reveals liabilities totalling $6,250,739, principally resulting from notes he signed as a member of two investment groups. He is also indebted to Gail Gaer in the sum of $289,000 as evidenced by two notes, one for $100,000 which is unsecured and another representing the balance of $189,000 secured by an unrecorded mortgage on the New Britain apartment complex. The circumstances surrounding the execution of these instruments led this court to disregard them entirely in determining the equity of the Defendant in the Princeton Associates apartments in New Britain.
With regard to the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates, the evidence is that the parties entered the marriage with almost nothing but that with hard work on the part of both of them and wise investments on Defendant's part, they managed to accumulate a substantial estate. In addition, Plaintiff received two inheritances which have been discussed elsewhere in this opinion.
On the evidence, it is also found that Defendant possesses a greater opportunity for the future acquisition of capital assets and income than does plaintiff.
After weighing carefully all of the factors involved in Sec. 46b-81c C.G.S. and giving particular attention to what it considered to be the predominating factors, i.e., the length of the marriage, the occupation, amount and sources of income of the parties, their vocational skills and employability, the opportunity of each for future acquisition of capital assets and income, and the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates, this court finds that, after giving Plaintiff full credit for the sums received by her by way of inheritance, and after excluding therefrom the amount of Plaintiff's note to Defendant, the total adjusted marital estate should be divided equally between the parties.
VI The Court having determined that the total marital estate amounted to $2,005,110 and that the amount of the adjusted marital estate available for equal distribution to the parties is $1,846,110, the following allocations of property and assets are now made in accordance with these findings.
(See Exhibit "B")
EXHIBIT "B" CT Page 883
 Total Marital Estate $ 2,005,110 Less Plaintiff's Note 13,000 --------- 1,992,110 Less Credit to Plaintiff 146,000 --------- $ 1,846,110 Marital Estate Available for Distribution
Plaintiff: $923,055 (1/2) + $146,000 = $1,069,055
Florida M/M acct. $ 55,000
Escrow Acct. 113,262
Jewelry 12,000
1988 Olds Cutlass 5,200
Washington D.C. condo 62,000
Def's Life Insurance (C.S.V.) 9,700
Def's I.R.A. 46,280
Def's Stocks, Bonds, Mutual Funds 51,935
Plaintiff's Stocks, Bonds, Mutual Funds 63,551
Def's savings 222,328
Def's Note to Plaintiff 427,799 --------- $ 1,069,055
Defendant: $ 923,055 (1/2)
C.P.A. Practice $ 110,000
Equity in Princeton Apts. 890,000
Equity in Apple Hill Rd. W.H. 340,854
1989 Olds 10,000 --------- 1,350,854 — 923,055 CT Page 884 --------- Note from Def. to Plaintiff $ 427,799
VII. THE FOLLOWING ORDERS ARE MADE WITH REFERENCE TO SCHEDULE B
A. The note from Defendant to Plaintiff for $427,799 shall provide for equal annual payments over a period of ten years and shall bear interest at 6% per annum. It shall contain a 30-day default clause and the right of the maker to anticipate payments in whole or in part at any time. It shall be secured by a mortgage on premises of Defendant in West Hartford and New Britain more particularly described in Schedule B.
B. An `orchestrian' owned by the parties and having an estimated value of $15,000 shall be immediately sold and the net proceeds of the sale shall be divided equally between the parties.
C. Plaintiff will convey to Defendant all her right, title and interest in and to 14 Apple Hill Road, West Hartford, Ct. Defendant in turn will hold Plaintiff harmless on the mortgage, taxes, utilities and all other costs to said premises.
D. Concerning various items of furniture and furnishings listed in "Court Exhibit I" attached hereto, Plaintiff shall take and have as her sole property those items on pp. 1 thru 5 which have been checked. The parties shall alternate in the selection of the remaining items listed on pp. 1-9 of this exhibit with Plaintiff making the first choice.
VIII. Alimony
After having considered all of the provisions of Sec.46b-82 C.G.S., including such predominating factors as the length of the marriage, the amount and sources of income of the parties, their vocational skills, and the awards which this court has previously made pursuant to Sec. 46b-81c C.G.S., it is ordered that Defendant pay Plaintiff as alimony, the sum of $400 per week for a period of four years, $200 per week for a period of three additional years, and lastly, $100 per week for a final period of three years.
This order shall be non-modifiable as to both term and amount and shall sooner terminate upon the remarriage of the Plaintiff or upon the death of either party.
IX. Other Orders
A. Counsel Fees:
Because of the financial orders previously made and on CT Page 885 the evidence, no award of counsel fees is made to either party.
B. Health and Life Insurance for Plaintiff
For the reasons stated in Part IX A. above, no orders are made on these subjects.
C. Liabilities
With the exception of the order concerning counsel fees previously made and real estate taxes on 14 Apple Hill Road, each of the parties will be personally responsible for any debts listed on his or her financial affidavit and will hold the other party harmless in that regard.
John D. Brennan, State Trial Referee